Matthew K. Edling (SBN 250940)
Victor M. Sher (SBN 96197)
Timothy R. Sloane (SBN 292864)
**SHER EDLING LLP**
100 Montgomery Street, Ste. 1410
San Francisco, CA 94104
Telephone: (628) 231-2500
Fax: (628) 231-2929
E-mail: matt@sheredling.com
E-mail: vic@sheredling.om
E-mail: tim@sheredling.com

*Attorneys for All Plaintiffs*
[*Additional Counsel Listed on Signature Page*]

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| COUNTY OF SAN MATEO, TOWN OF ATHERTON, CITY OF BRISBANE, TOWN OF COLMA, CITY OF EAST PALO ALTO, CITY OF FOSTER CITY, TOWN OF HILLSBOROUGH, CITY OF MENLO PARK, CITY OF PACIFICA, TOWN OF PORTOLA VALLEY, CITY OF REDWOOD CITY, CITY OF SAN BRUNO, CITY OF SAN CARLOS, CITY OF SAN MATEO, and TOWN OF WOODSIDE, both individually and on behalf of THE PEOPLE OF THE STATE OF CALIFORNIA, | No. 4:22-cv-03257-JST **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES** |

No. 4:22-cv-03257-JST

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES**

| | |
|---|---|
| Judge: | Hon. Jon S. Tigar |
| Department: | Oakland Courthouse, Courtroom 6 |
| CMC Date: | November 22, 2022 |
| Hearing Date: | Not yet available; the parties are continuing to confer. The parties will notify the Court as soon as they are able to identify a date. |

Plaintiffs,

v.

MONSANTO COMPANY, SOLUTIA, INC., PHARMACIA, LLC, and DOES 1-100,

Defendants.

ORAL ARGUMENT REQUESTED

SHER EDLING
LLP

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 4

    A.   Factual Background ................................................................................... 4

    B.   Procedural History ..................................................................................... 5

III.    ARGUMENT ........................................................................................................ 6

    A.   Defendants bear a heavy burden. ............................................................. 6

    B.   This Court lacks diversity jurisdiction. ................................................... 7

        1.   The People are a real party in interest. .......................................... 7

            i.    The People's representative public nuisance abatement claim serves the State's interests. ................................................... 7

            ii.   The County and Municipalities' claims also serve the State's interests. ....................................................................... 12

        2.   Analogous case law confirms this view. ...................................... 15

            i.    This case is akin to *Nevada*, not *Lucent*. ............................. 15

            ii.   Numerous decisions by district courts show that the People are a real party in interest. ............................................ 17

    C.   Defendants' other arguments are unavailing. ....................................... 18

        1.   Defendants distort the abatement relief Plaintiffs seek. .............. 19

        2.   There is no requirement for relief to enure to the State alone. .... 20

        3.   Defendants' case law citations will not help them. ..................... 22

IV.     CONCLUSION .................................................................................................. 25

SHER EDLING
LLP

# TABLE OF AUTHORITIES

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982).............................................................................................. 10, 16

*Am. Motorists Ins. Co. v. Cowan*,
   127 Cal. App. 3d 875 (1982) ......................................................................................... 20

*Babbitt v. Babbitt*,
   44 Cal. 2d 289 (1955) .................................................................................................... 20

*Birke v. Oakwood Worldwide*,
   169 Cal. App. 4th 1540 (2009) ..................................................................................... 14

*California v. City & Cnty. of S.F.*,
   94 Cal. App. 3d 522 (1979) ........................................................................................... 10

*California v. Exide Techs., Inc.*,
   No. 2:14-cv-01169-ABC-MANx, 2014 WL 12607708 (C.D. Cal. Apr. 9, 2014).............. 17, 18

*Caterpillar Inc. v. Lewis*,
   519 U.S. 61 (1996)............................................................................................................ 6

*Chen v. L.A. Truck Ctrs., LLC*,
   42 Cal. App. 5th 488 (2019) ..................................................................................... 15, 16

*City of Coronado v. San Diego Unif. Port Dist.*,
   227 Cal. App. 2d 455 (1964) ........................................................................................ 14

*Cnty. of San Luis Obispo v. Abalone, All.*,
   178 Cal. App. 3d 848 (1986) ............................................................................... 5, 14, 19

*Cnty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*,
   No. 5:12-cv-03256-EJD, 2012 WL 4189126 (N.D. Cal. Sept. 17, 2012) .......................... 9, 18

*Cnty. of Santa Clara v. Superior Court*,
   50 Cal. 4th 35 (2010) ................................................................................................. 9, 10

*Cnty. of Santa Clara v. Wang*,
   No. 5:20-CV-05823-EJD, 2020 WL 8614186 (N.D. Cal. Sept. 1, 2020)............................. 8, 17

*Dep't of Fair Emp't & Hous. v. Corr. Corp. of Am.*,
   No. 1:09-cv-01388-LJO-DLBx, 2009 WL 3806258 (E.D. Cal. Nov. 12, 2009)....................... 21

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
   (Lucent), 642 F.3d 728 (9th Cir. 2011)............................................................................. passim

*Ex parte Marincovich*,
   48 Cal. App. 474 (1920) ................................................................................................ 10

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983)............................................................................................................... 7

*GameStop, Inc. v. Superior Court*,
   26 Cal. App. 5th 502 (2018) ............................................................................................ 9

SHER EDLING
LLP

*Glacier Gen. Assur. Co. v. G. Gordon Symons Co.*,
  631 F.2d 131 (9th Cir. 1980) ..................................................................................... 9

*Hansen v. Grp. Healthcare Coop.*,
  902 F.3d 1051 (9th Cir. 2018) ................................................................................. 2, 7

*HB Gen. Corp. v. Manchester Partners, L.P.*,
  95 F.3d 1185 (3d Cir. 1996) .................................................................................... 13

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997)................................................................................................. 11

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) .......................................................... passim

*In re: Avandia Mktg., Sales Practices & Prod. Liab. Litig. v. GSK*,
  238 F. Supp. 3d 723 (E.D. Pa. 2017) ................................................................ 19, 23

*Jacobellis v. Ohio*,
  378 U.S. 184 (1964) .................................................................................................. 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)................................................................................................... 6

*Mallon v. Long Beach*,
  44 Cal. 2d 199 (1955) ............................................................................................. 14

*Mo., Kan., & Tex. Ry. Co. v. Hickman*,
  183 U.S. 53 (1901)................................................................................................ 3, 21

*Montelongo v. Radioshack*,
  No. 2:09-cv-01235-MMM-AJWx, 2010 WL 11507995 (C.D. Cal. Mar. 31, 2010)............... 21

*Moor v. Alameda Cnty.*,
  411 U.S. 693 (1973).................................................................................................. 1

*Moore-Thomas v. Alaska Airlines, Inc.*,
  553 F.3d 1241 (9th Cir. 2009) ................................................................................. 7

*Nat'l Audubon Soc'y v. Superior Court*,
  33 Cal. 3d 419 (1983) ............................................................................................. 10

*Navarro Savings Ass'n v. Lee*,
  446 U.S. 458 (1980)................................................................................................... 1

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) ............................................................................ passim

*Nguyen v. Superior Court*,
  49 Cal. App. 4th 1781 (1996) .................................................................................. 9

*People ex rel. Gallo v. Acuna*,
  14 Cal. 4th 1090 (1997) ................................................................................. 8, 9, 14

*People ex rel. L.A. City Attorney v. Monsanto Co.*,
  No. 2:22-cv-02399-ODW-SKs, 2022 WL 2355195 (C.D. Cal. June 30, 2022)............... passim

SHER EDLING
LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*People ex rel. Sorenson v. Randolph*,
  99 Cal. App. 3d 183 (1979) ................................................................ 19

*People v. Check 'N Go of Cal., Inc.*,
  No. C 07-02789 JSW, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007) ............................... 18, 24

*People v. ConAgra Grocery Prods. Co.*,
  17 Cal. App. 5th 51 (2017) .......................................................... 15, 19, 20

*People v. Love*,
  19 Cal. 676 (1862) ....................................................................... 1

*People v. M & P Invs.*,
  213 F. Supp. 2d 1208 (E.D. Cal. 2002) ........................................................ 19, 24

*People v. N. Tr. Corp.*,
  No. 2:12-cv-01813-DMG-FMOx, 2012 WL 12888851 (C.D. Cal. Dec. 19, 2012) ..... 19, 22, 23

*People v. Purdue Pharma L.P.*,
  No. 8:14-cv-01080-JLS-DFMx, 2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) .............. passim

*People v. Steelcase Inc.*,
  792 F. Supp. 84 (C.D. Cal. 1992) ........................................................... 18

*People v. Time Warner, Inc.*,
  No. 2:08-cv-04446-SVW-RZx, 2008 WL 4291435 (C.D. Cal. Sept. 17, 2008) .......... 18, 21, 24

*People v. Universal Syndications, Inc.*,
  No. C 09-1186-JF(PVT), 2009 WL 1689651 (N.D. Cal. June 16, 2009) ............... 18, 21, 22, 24

*Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*,
  221 Cal. App. 3d 1601 (1990) ............................................................. 15

*Tomlinson v. Cnty. of Alameda*,
  54 Cal. 4th 281 (2012) ................................................................... 10

*United States v. California*,
  432 U.S. 40 (1977) ....................................................................... 11

*Utah Div. of State Lands v. United States*,
  482 U.S. 193 (1987) ...................................................................... 11

*Vons Cos. v. Seabest Foods, Inc.*,
  14 Cal. 4th 434 (1996) ................................................................... 15

*Zack's, Inc. v. City of Sausalito*,
  165 Cal. App. 4th 1163 (2008) ............................................................ 14

**Statutes**

28 U.S.C. § 1332(a) ....................................................................... 1, 6

33 U.S.C. § 1313(d) ......................................................................... 4

Cal. Civ. Code § 3480 ....................................................................... 8

Cal. Civ. Code § 3493 ....................................................................... 9

Cal. Civ. Proc. Code § 731 ........................................................................................ passim

Cal. Gov't Code § 12965(c)(2) ........................................................................................ 16

Cal. Gov't Code § 34502 .................................................................................................. 2

**Rules**

Fed. R. Civ. P. 20(a)(1)(A) ............................................................................................. 13

Fed. R. Civ. P. 54(c) ...................................................................................................... 20

**Other Authorities**

6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1543 ................. 13

Restatement (Second) of Torts § 821B (Am. L. Inst. 1979) ............................................... 8

**NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT**

TO ALL PARTIES, THEIR COUNSEL OF RECORD, THE COURT, AND THE

CLERK:

PLEASE TAKE NOTICE that plaintiffs—the People of the State of California, acting by and through San Mateo County Attorney John D. Nibbelin, San Mateo County, the Town of Atherton, City of Brisbane, Town of Colma, City of East Palo Alto, City of Foster City, Town of Hillsborough, City of Menlo Park, City of Pacifica, Town of Portola Valley, City of Redwood City, City of San Bruno, City of San Carlos, City of San Mateo, and Town of Woodside—hereby move the Court pursuant to 28 U.S.C. § 1447(c) for an order to remand this action to the Superior Court of California, County of San Mateo. This case does not satisfy the ground for removal cited in Defendants' Notice of Removal: diversity jurisdiction under 28 U.S.C. § 1332(a)(1). This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the records on file in this action, and any other written or oral evidence or argument that may be presented at or before the time this motion is decided.

The parties are continuing to confer about a hearing date. They will notify the Court as soon as they are able to identify a mutually workable date when the Court is available.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

This remand motion turns on whether the People of the State of the California are a "real

4

part[y] to the controversy." *See Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980). The

5

People (i.e., the State[1]) are a real party in interest because this action seeks to advance state interests

6

shared by countless Californians. Because the People are a real party in interest, the complete

7

diversity requirement under 28 U.S.C. § 1332(a) is not satisfied. *See Moor v. Alameda Cnty.*, 411

8

U.S. 693, 717 (1973) ("[A] State is not a 'citizen' for purposes of the diversity jurisdiction."). This

9

Court lacks subject-matter jurisdiction, requiring remand.

10

Plaintiffs the People, San Mateo County, and fourteen cities and towns in the County (the

11

"Municipalities")[2] sued in state court, asserting exclusively state-law tort claims against three

12

Defendants—citizens of other states—that have succeeded to the liabilities of the "original"

13

Monsanto Company ("Original Monsanto"): (1) the "current" Monsanto Company ("Current

14

Monsanto"), (2) Solutia, Inc., and (3) Pharmacia, LLC. *See generally* Sloane Decl. Ex. 1, First

15

Amended Complaint ("FAC").

16

Plaintiffs' claims arise out of widespread environmental and public health harms caused

17

by polychlorinated biphenyls ("PCBs"), which are toxic, carcinogenic, and persistent chemicals

18

that Original Monsanto made and sold in massive quantities. *See* FAC ¶¶ 5, 8, 30, 42–52. Although

19

Congress banned PCBs in the 1970s, they persist throughout the San Francisco Bay Area. *Id.* ¶¶ 7,

20

10–16, 35, 90–95. PCBs are so ubiquitous that regulators consider the entire Bay impaired with

21

PCBs. *Id.* ¶ 100. PCBs in the Bay cause pronounced risks for birds, fish, and people, especially

22

23

24

[1] "The People of the State of California" means "the State of California." *People v. Love*, 19 Cal. 676, 681 (1862) (the terms "describe the same party"); *see People ex rel. L.A. City Attorney v. Monsanto Co.*, No. 2:22-cv-02399-ODW-SKs, 2022 WL 2355195, at *2 (C.D. Cal. June 30, 2022) (the terms are "descriptive of the same sovereignty" (quoting *People v. Purdue Pharma L.P.*, No. 8:14-cv-01080-JLS-DFMx, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014)).

25

26

27

28

[2] These cities and towns are the Town of Atherton, City of Brisbane, Town of Colma, City of East Palo Alto, City of Foster City, Town of Hillsborough, City of Menlo Park, City of Pacifica, Town of Portola Valley, City of Redwood City, City of San Bruno, City of San Carlos, City of San Mateo, and Town of Woodside. The Notice of Removal provides only an incomplete list of the cities and towns. *See* ECF No. 1 ¶ 1.

those who consume the Bay's PCB-tainted fish. *Id.* ¶¶ 102–04. The Bay's PCB contamination is linked to on-land contamination. The County and the Municipalities operate stormwater systems that carry PCB-contaminated water and sediment into the Bay. To help control the Bay's PCB contamination, state regulations require the County and the Municipalities to limit these PCB discharges, including discharges from and through PCB-contaminated public property. *Id.* ¶¶ 12–13, 105–08.

The People bring a "representative" public nuisance claim under Cal. Civ. Proc. Code § 731, which empowers the County's county counsel and the Municipalities' city attorneys to bring "[a] civil action . . . in the name of the people of the State of California to abate a public nuisance." Cal. Civ. Proc Code § 731.[3] Through this claim, the People seek abatement of the public nuisance arising from "PCB contamination of the County, the Municipalities, and the Bay." FAC ¶ 114. Separately, the County and the Municipalities also bring three "non-representative" tort claims on behalf of themselves: (1) a public nuisance claim; (2) a private nuisance claim arising out of PCB contamination of public property controlled by the County and the Municipalities; and (3) a trespass claim relating to such property contamination. Through these claims, the County and the Municipalities seek both abatement and compensatory damages.

Defendants fail to overcome the "strong presumption against removal jurisdiction," *Hansen v. Grp. Healthcare Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018), by demonstrating that the People are not a real party in interest. This Court must decide whether the People are a real party in interest by "examin[ing] the essential nature and effect of the proceeding as it appears from the entire record." *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (quotations omitted). Here, the record demonstrates that the People are a real party in interest. The People's representative public nuisance claim addresses widespread PCB contamination of the Bay, the County, and the Municipalities. The abatement relief the People request would vindicate the

---

[3] Under California law, the terms "town" and "city" are interchangeable. *See* Cal. Gov't Code § 34502 (a city's legislative body may rename itself as a town, and vice versa). It is irrelevant that some of the Municipalities are called towns, not cities.

1    State's time-honored interests in abating public nuisances, protecting state waters, preserving the
2    environment and public trust resources, and safeguarding public health.

3         This conclusion accords with the weight of authority. Recently, the Central District of
4    California in *People ex rel. L.A. City Attorney v. Monsanto Co.* (*Los Angeles*), No. 2:22-cv-02399-
5    ODW-SKx, 2022 WL 2355195 (C.D. Cal. June 30, 2022), found the People to be a real party in
6    interest to a similar PCB-related suit against the very same Defendants involving both a
7    representative public nuisance claim by the People and a non-representative public nuisance claim
8    by the City of Los Angeles. The court stressed that the People have "concrete interests" in
9    "clean[ing] its waters of PCBs, keep[ing] its fish and wildlife healthy, and prevent[ing] deadly
10   diseases that arise from the ingestion of PCBs." *Id.* at *3. The court emphasized that abatement
11   would "help clean [California's] waters, improve the health and well-being of its wildlife, and help
12   its citizens avoid serious diseases." *Id.* So, too, for this lawsuit.

13        Defendants' counterarguments in their Notice of Removal and their unsuccessful
14   opposition to remand in *Los Angeles* are unpersuasive. Primarily, Defendants argue that the County
15   and Municipalities' non-representative claims undermine the conclusion that the People are a real
16   party in interest. *See* NOR ¶¶ 15–16. Ninth Circuit case law does not neatly resolve whether and
17   how—when deciding whether the People are a real party in interest—this Court should consider
18   the County and Municipalities' claims. But first principles suggest that the County and
19   Municipalities' claims matter little, if at all. Namely, a single transaction or occurrence (here, the
20   Bay Area's widespread PCB contamination problem) may implicate a multitude of rights
21   belonging to a wide array of potential plaintiffs. So, examining the rights the County and
22   Municipalities seek to enforce would shed little light on whether the People are also a real party in
23   interest. And even if this Court considers the County and Municipalities' non-representative
24   claims, they would only support that the People are a real party in interest.

25        Defendants' other arguments are meritless. Defendants incorrectly downplay the requested
26   abatement relief as narrow and parochial. NOR ¶ 16. Defendants misread dicta from *Missouri,*
27   *Kansas, & Texas Railway Co. v. Hickman* (*Missouri Railway*), 183 U.S. 53 (1901), to conjure a
28

requirement that for the People to be a real party in interest, the relief they seek must "enure" to the benefit of the State *alone*. *Id.* ¶ 14. Numerous decisions confirm "that is not the test in the Ninth Circuit." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019). Based on their briefing in *Los Angeles*, Plaintiffs expect Defendants to rely on three other decisions. These case, which are discussed in Section III.C.3, are distinguishable and lack persuasive force.

There is no complete diversity. This action should be remanded.

## II.     BACKGROUND

### A.     Factual Background

PCBs are ubiquitous pollutants. *See* FAC ¶¶ 4, 70, 74, 77. They are toxic, carcinogenic, resistant to degradation, and persistent in the environment. *Id.* ¶¶ 30, 42–48. They also create numerous environmental and public health risks. *Id.* ¶¶ 36–41. PCBs build up in living tissue, accumulate at higher levels in the food chain, and harm non-human organisms; for example, PCBs are especially harmful to birds that eat fish contaminated with PCBs. *Id.* Similarly, PCBs cause health risks for humans who consume PCB-contaminated fish. *Id.* ¶¶ 43–48.

PCB contamination is pervasive in the Bay Area and severely impacts the Bay itself. *See id.* ¶¶ 7, 10–16, 35, 100. Regulators consider the entire Bay "impaired" by PCBs under Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d). FAC ¶ 100. Correspondingly, state public health authorities have issued consumption advisories for fish caught in the Bay. *Id.* ¶¶ 102–03. Studies have identified high PCB concentrations in the eggs of herons, terns (including the endangered California least tern), and other birds in the Bay, and linked this contamination to avian reproductive problems. *Id.* ¶ 104. Because PCB contamination is so pervasive in the Bay Area, the County and Municipalities' stormwater systems collect dry-weather and stormwater runoff that contains PCB-contaminated water and sediment. *Id.* ¶¶ 12–13. Because the Bay is PCB-impaired,

state water quality regulations require the County and the Municipalities to sharply curtail PCB discharges from these stormwater systems into the Bay. *Id.* ¶¶ 13, 105–08.[4]

Original Monsanto caused these environmental and public health risks. Between the late 1920s to the late 1970s, Original Monsanto and its predecessor monopolized the U.S. PCB market and profited handsomely. *See id.* ¶¶ 5, 8, 49–52, 80–81. Original Monsanto had early knowledge of PCB risks. *Id.* ¶¶ 56–95. For example, it knew about PCB toxicity by the early 1930s, *id.* ¶¶ 57–58, and it knew that PCBs were causing a grave global pollution problem by the 1960s, *id.* ¶¶ 69–77. Despite its knowledge of PCBs' risks to the environment and public health, Original Monsanto aggressively promoted PCBs for many agricultural, commercial, household, and industrial applications where they would inevitably be released into the environment. *Id.* ¶¶ 66–67. Original Monsanto also failed to warn about PCB risks, failed to instruct about proper PCB disposal, and disseminated disinformation about PCBs' dangers. *Id.* ¶¶ 7–8. Original Monsanto did not stop selling PCBs until Congress forced its hand. *Id.* ¶¶ 90–95.

Beginning in 1997, Original Monsanto underwent a series of transactions. Their effect was to spin off Original Monsanto into the three Defendants: Current Monsanto, Solutia, and Pharmacia. *Id.* ¶¶ 3, 25. These Defendants, none of which are citizens of California, have succeeded to or agreed to bear the liabilities of Original Monsanto. *Id.* ¶¶ 3, 20–22, 24–26.

### B.   Procedural History

The People bring a representative public nuisance claim against Defendants. *See* FAC ¶¶ 111–23. The People define the public nuisance as "PCB contamination of the County, the Municipalities, and the Bay." *Id.* ¶ 114. The People are represented by the County and the Municipalities under Cal. Civ. Proc. Code § 731. The People seek only abatement relief, not compensatory damages. *See Cnty. of San Luis Obispo v. Abalone All.*, 178 Cal. App. 3d 848, 860 (1986) (abatement is only remedy available for a Cal. Civ. Proc. Code § 731 claim).

---

[4] PCBs break down very slowly in the Bay. If the rate at which new PCBs enter the Bay is reduced below the Bay's assimilation rate (i.e., breakdown rate) for PCBs, the Bay's PCB impairment will gradually be remedied.

1    Separately, the County and the Municipalities bring non-representative claims on behalf of

2  themselves for public nuisance, private nuisance, and trespass against Defendants. *See* FAC

3  ¶¶ 124–64. The non-representative public nuisance claim is nearly identical to the People's public

4  nuisance claim with two differences: the County and the Municipalities are the plaintiffs, and the

5  County and the Municipalities seek compensatory damages in addition to abatement. *See id.*

6  ¶¶ 124–40; *infra* Section III.B.1.ii & n.11 (explaining these differences). Meanwhile, the private

7  nuisance and trespass claims, which address PCB-contaminated public property controlled by the

8  local governments, are narrower than the public nuisance claims. *See* FAC ¶¶ 140–64.

9  Nevertheless, the private nuisance and trespass claims are—like the public nuisance claims—

10  rooted in the broader PCB pollution problem affecting the Bay Area.

11    Defendants timely removed this action. *See* Notice of Removal ("NOR"), ECF No. 1.

12  **III.    ARGUMENT**

13    Defendants contend the People are not a real party in interest because this litigation does

14  not serve, or only tangentially serves, the State's interests.[5] *See* NOR ¶¶ 12–16. Defendants fail to

15  meet their heavy burden to establish removal jurisdiction. This suit obviously serves state interests:

16  it addresses a major threat to public health and the environment, including the contamination of

17  state waters and injuries to state public trust resources like fish and birds. As such, the People are

18  a real party in interest, and the complete diversity requirement is not met. Defendants' anticipated

19  counterarguments are unmeritorious.

20    **A.    Defendants bear a heavy burden.**

21    This Court has only "limited" subject-matter jurisdiction. *See Kokkonen v. Guardian Life*

22  *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, Defendants invoke diversity jurisdiction under

23  28 U.S.C. § 1332(a), which requires complete diversity—i.e., that each Plaintiff is a citizen of a

24  different state as each Defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

25    Defendants bear the burden of demonstrating complete diversity. *See Kokkonen*, 511 U.S.

26  at 377 ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the

27
28

---

[5] Plaintiffs agree with Defendants that the County and the Municipalities are completely diverse
from the Defendants and that the amount-in-controversy requirement is met.

1    burden of establishing the contrary rests upon the party asserting jurisdiction." (citation omitted)).

2    The procedural posture further elevates Defendants' burden because there is a "strong presumption

3    against removal jurisdiction." *Hansen*, 902 F.3d at 1057. Under this presumption, "any doubt about

4    the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines,*

5    *Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

6         "This [presumption] is true regardless of whether the plaintiff is a private party or a

7    government entity." *In re Facebook, Inc.*, 354 F. Supp. 3d at 1124. "But when an action has been

8    brought by a state or one of its officials or subdivisions, the need to resolve doubts against the

9    exercise of federal jurisdiction is particularly acute," because "'[c]onsiderations of comity' should

10   make federal courts 'reluctant to snatch such cases." *Id.* (citing *Franchise Tax Bd. of State of Cal.*

11   *v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983)).

12        **B.    This Court lacks diversity jurisdiction.**

13        The People are a real party in interest because their representative public nuisance claim

14   has a public character; exercises the State's authority to sue to abate public nuisances; and seeks

15   judicial relief that would benefit countless Californians by protecting state waters, public trust

16   resources, public health, and the environment. Because the People are a party, the complete

17   diversity requirement is not satisfied. The County and the Municipalities' non-representative

18   claims are only minimally relevant, if at all relevant, to the real-party-in-interest inquiry for the

19   People. But these non-representative claims also support that the State is a real party in interest.

20        **1.    The People are a real party in interest.**

21             **i.    The People's representative public nuisance abatement
                        claim serves the State's interests.**
22

23        This Court must determine whether the People are a real party in interest by "examin[ing]

24   the essential nature and effect of the proceeding as it appears from the entire record." *See Nevada*

25   *v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (quotations omitted). The People are a

26   real party in interest if this suit seeks to protect "specific, concrete," *id.*, "strong," or "distinct," *id.*

27   at 671, state interests—as opposed to merely "tangential" ones, *id.* at 672 (quotations omitted).

28

SHER
EDLING LLP

The State's interest in this litigation must go beyond a mere "general governmental interest" in promoting public welfare and enforcing its laws. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.* (*Lucent*), 642 F.3d 728, 737 (9th Cir. 2011) (cleaned up).

To determine whether the People are a real party in interest, this Court may consider the following factors (among others): (1) "the substantive state law," *id.* at 738 & n.3, including whether the requested relief or the cause of action are available only to the State, and whether a private party would be required to satisfy a higher burden of proof, *Nevada*, 672 F.3d at 672; (2) whether the relief obtained from a favorable judgment would enure to the state or to private parties, *Lucent*, 642 F.3d at 737; (3) the number of people who would benefit from a favorable judgment, *Nevada*, 672 F.3d at 670; and (4) practical public policy considerations, *id.* at 670–71 (stressing Nevada's public policy interests in the foreclosure crisis).

Here, the substantive law of representative public nuisance alone is sufficient to conclude that the People are a real party in interest. *See Cnty. of Santa Clara v. Wang*, No. 5:20-CV-05823-EJD, 2020 WL 8614186, at *1 (N.D. Cal. Sept. 1, 2020) (finding the People to be a real party in interest based on the substantive law of representative public nuisance alone). Public nuisance is an atypical tort that is imbued with state interests, not individual interests. As the California Supreme Court explained in *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1104, 1105 (1997), a public nuisance has a "community aspect" or "a distinctly public quality": it is a "substantial and unreasonable" interference with "the quality of organized social life."[6] Because of this quality, "[o]riginally, a public nuisance was an offense against the crown, prosecuted as a crime." *Id.* at 1103, 1105; *see* Restatement (Second) of Torts § 821B (Am. L. Inst. 1979) (similar). "In this country, as in England, *civil* suits in equity to *enjoin* public nuisances at the instance of public law officers—typically a state's Attorney General—grew increasingly common during the course of the 19th century." *Acuna*, 14 Cal. 4th at 1103. Such suits vindicate the state's "right" and "obligation" to "maintain a decent society." *Id.* at 1102 (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 199 (1964)).

---

[6] So, a key distinguishing feature of a public nuisance is that it affects a "considerable number of persons." *Acuna*, 14 Cal. 4th at 1104 (quoting Cal. Civ. Code § 3480).

Here, the People's representative public nuisance claim exercises the State's right and obligation to sue to enjoin public nuisances. The relevant statute is Cal. Civ. Proc. Code § 731:

> A civil action may be brought in the name of the people of the State of California to abate a public nuisance . . . by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists.  Each of those officers shall have concurrent right to bring an action for a public nuisance existing within a town or city.

Two key features of this statute underscore that the claim is an exercise of State authority that serves State interests. <u>First</u>, the statute requires any claim to "be brought in the name of the people of the State of California." Cal. Civ. Proc. Code § 731. This reflects that the California Legislature—which has "lawmaking supremacy" over public nuisance law, *Acuna*, 14 Cal. 4th at 1106—has deputized county counsel and city attorneys as "state officer[s]" and as "legal representative[s] of the People," *see GameStop, Inc. v. Superior Court*, 26 Cal. App. 5th 502, 511 (2018) (evaluating claims under California's Unfair Competition Law ("UCL"), which similarly deputizes local officials). Put another way, the Legislature has provided that a representative public nuisance claim is brought by the People, not the local officials who happen to represent them. *Glacier Gen. Assur. Co. v. G. Gordon Symons Co.*, 631 F.2d 131, 133–34 (9th Cir. 1980) ("The identity of the real party interest . . . depends on the legal relationship of the parties under applicable substantive law."); *see Cnty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, No. 5:12-cv-03256-EJD, 2012 WL 4189126, at *4 (N.D. Cal. Sept. 17, 2012) (a county counsel representing the People under California's False Advertising Law ("FAL") was a mere "conduct upon which the [State of California] is tied to this suit").[7]

<u>Second</u>, a public officer bringing a representative public nuisance claim—like the State, and unlike an ordinary plaintiff bringing a non-representative public nuisance claim—need not prove special or particular damage. *See Cnty. of Santa Clara v. Superior Court*, 50 Cal. 4th 35, 55 (2010) (private party must show public nuisance is "specially injurious" (quoting Cal. Civ. Code § 3493)). This reflects how county counsel and city attorneys stand in the shoes of the California

---

[7] *Accord Nguyen v. Superior Court*, 49 Cal. App. 4th 1781, 1788–89 (1996) (a civil action by a county counsel under a red-light abatement statute "is prosecuted in the name of the People of the state, as are criminal prosecutions, which indicates that the county as such is not as much concerned as the People of the state" (quotations omitted)).

1    Attorney General—thus enjoying a lowered burden of proof—when bringing representative public

2    nuisance claims. *See Nevada*, 672 F.3d at 672 (finding relevant to the real-party-in-interest inquiry

3    whether a private plaintiff would be subject to a higher burden of proof).

4            These features of Cal. Civ. Proc. Code § 731 help explain why "[t]here can be no question"

5    that a representative public nuisance claim "is . . . prosecuted on behalf of the public," not the

6    county counsel and city attorneys who happen to represent the People. *Cnty. of Santa Clara v.*

7    *Superior Court*, 50 Cal. 4th at 55; *accord People v. Purdue Pharma L.P.*, No. 8:14-cv-01080-JLS-

8    DFMx, 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) (finding this to be the "clear teaching

9    of California law").

10           Factors other than "the substantive state law," *Nevada*, 672 F.3d at 682, reinforce this

11   conclusion. The Bay is a state water of immense cultural, economic, environmental, and social

12   significance. *See Ex parte Marincovich*, 48 Cal. App. 474, 478–79 (1920) (state waters extend for

13   three miles offshore of the California coast); *see also California v. City & Cnty. of S.F.*, 94 Cal.

14   App. 3d 522, 524 (1979) (describing the Bay as a state water). The Bay's PCB contamination

15   problem affects countless Californians by injuring the environment, public trust resources, and

16   public health. PCB contamination harms fish, birds, habitats, and recreation opportunities in the

17   Bay. FAC ¶¶ 35–37, 40, 102–04. This constitutes an impairment of public trust resources that the

18   State is required to protect. *See Nat'l Audubon Soc'y v. Superior Court*, 33 Cal. 3d 419, 434–35

19   (1983) (scope of public trust includes fishing, recreation, and preservation of the environment);

20   *see also Tomlinson v. Cnty. of Alameda*, 54 Cal. 4th 281, 285 (2012) (noting "California's strong

21   public policy of protecting the environment"). The Bay's PCB contamination also creates a

22   widespread public health threat by tainting fish. FAC ¶¶ 43–48, 102–03. It is well-established that

23   the State has a concrete interest in protecting public health. *See Alfred L. Snapp & Son, Inc. v.*

24   *Puerto Rico*, 458 U.S. 592, 607 (1982) (under the *parens patriae* doctrine, "a State has a quasi-

25   sovereign interest in the health and well-being—both physical and economic—of its residents in

26   general"). Consonantly, state regulations declare the entire Bay to be PCB-"impaired" and require

27   the County and the Municipalities to curb PCB discharges into it. *See* FAC ¶¶ 13–14, 105–10. The

28

1  State's regulatory involvement underscores how the Bay's PCB contamination implicates many
2  interlocking state interests.

3  What's more, PCBs—which often bind to sediment—contaminate and injure the Bay's
4  submerged bottomlands. *See id.* ¶¶ 11, 12, 113, 126, 135(h). Submerged bottomlands underlying
5  the Bay's navigable waters "have historically been considered 'sovereign lands.'" *Idaho v. Coeur*
6  *d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997).[8] The State's ownership of these lands is "an
7  essential attribute of [its] sovereignty," *id.* (quoting *Utah Div. of State Lands v. United States*, 482
8  U.S. 193, 195–98 (1987)), and the lands have "a unique status in the law and [are] infused with a
9  public trust the State itself is bound to respect," *id.*

10  If the People prevail, the proper remedy would be abatement of the public nuisance, which
11  is defined as "PCB contamination of the County, the Municipalities, and the Bay." FAC ¶ 114.
12  The remedy would protect the State's aforementioned interests in the environment, public trust
13  resources, public health, and submerged bottomlands. Any abatement actions within the County
14  and the Municipalities would serve to protect the Bay. After all, the PCB contamination problem
15  in the County and the Municipalities is inextricably linked to that of the Bay: the County and the
16  Municipalities must control PCBs on land to protect the Bay from harmful discharges. *See* FAC
17  ¶¶ 12–13, 105–08.[9]

18  *Los Angeles*, where the court addressed a similar representative public nuisance claim
19  against the same Defendants, followed precisely the same reasoning:

20  The State of California here has concrete interests in this litigation and will
21  substantially benefit from the remedy of abatement. California desires to clean its
    waters of PCBs, keep its fish and wildlife healthy, keep its beaches usable, and
22  prevent deadly diseases that arise from the ingestion of PCBs. Further, California's
    substantial benefit from the remedy of abatement directly relates to its concrete
23  interests. California asserts that an abatement would help clean its waters, improve

24  _____
[8] As the *Coeur d'Alene* Court explained, new states (other than the original thirteen states) gained
25  sovereign control over submerged "lands underlying [inland] navigable waters" upon statehood
    under the equal-footing doctrine. *See* 521 U.S. at 283–84. From a federal-law perspective, the Bay
26  is a navigable "inland water." *United States v. California*, 432 U.S. 40, 41 (1977) (San Francisco
    Bay is an inland water, not part of the territorial sea).
27
[9] Note that part of the Bay lies within the County's boundaries. FAC ¶ 11.
28

SHER
EDLING LLP

the health and well-being of its wildlife, and help its citizens avoid serious diseases. As California has concrete interests and will derive substantial benefit from the requested remedies, the Court finds that California is a real party in interest in this case.

2022 WL 2355195, at *3 (cleaned up). The court also recognized that even if "the [abatement] relief sought" might "primarily take place within the [City of Los Angeles's] boundaries," such abatement would serve state interests. *See id.* at *5. So too, here.

In sum, "the substantive state law" at hand, *Lucent*, 642 F.3d at 738 n.3, demonstrates that the People are a real party in interest. Many other factors including the nature of the requested relief, *id.* at 737, the number of people who would benefit from a favorable judgment, *Nevada*, 672 F.3d at 670, and public policy considerations, *id.* at 670–71, support the same conclusion.

### ii. The County and Municipalities' claims also serve the State's interests.

Defendants argue that the County and Municipalities' non-representative claims undermine the conclusion that the People are a real party in interest. *See* NOR ¶¶ 15–16. Ninth Circuit precedent does not resolve whether and how this Court should consider the County and Municipalities' non-representative claims when determining whether the People are a real party in interest. However, first principles suggest that the County and Municipalities' claims matter little, if at all, to resolving this issue. In any case, these non-representative claims show that this litigation serves the State's interests, and, therefore, the People are a real party in interest.

*Lucent* and *Nevada*—the Ninth Circuit's two key decisions—shed little light on when and how a court in a multi-plaintiff case should consider the claims of other plaintiffs when determining whether a plaintiff is a real party in interest. In *Lucent*, the Ninth Circuit examined an individual co-plaintiff's request for relief to help determine whether a state agency was a real party in interest. *See* 642 F.3d at 740–41. But the court did not clarify whether it is always appropriate to consider co-plaintiffs' claims, much less when or how to consider them. *Id.* In *Nevada*, the Ninth Circuit stressed the importance of "looking at the case as a whole to determine the real party in

interest." 672 F.3d at 670. But because *Nevada* was a single-plaintiff case, *id.* at 674, the court did not explain when and how to consider other plaintiffs' claims.

However, first principles support the conclusion that the County and Municipalities' claims are minimally relevant to this Court's determination of whether the People are a real party in interest. A real party in interest is *any* person "who, according to the governing substantive law, is entitled to enforce [a] right." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1543 & n.1 (3d ed., Apr. 2022 update). A single action may have multiple real party plaintiffs who are each entitled to enforce different or overlapping rights "with respect to or arising out of the same [transaction or occurrence]." Fed. R. Civ. P. 20(a)(1)(A). "There may [even] be multiple real parties in interest for a claim." *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996).

Because the massive PCB contamination problem in the Bay Area implicates a multitude of rights belonging to many potential claimants, the County and Municipalities' non-representative claims shed little light on whether the People are also a real party in interest with an enforceable right. Consider that under the rules of permissive joinder, an individual who was injured by consuming the Bay's PCB-contaminated fish could be joined to this action as a co-plaintiff. *See* Fed. R. Civ. P. 20(a)(1)(A). There is no plausible reason why examining that hypothetical co-plaintiff's personal injury claims (to which the People obviously are not a real party in interest, *see Lucent*, 642 F.3d at 739) would help the Court decide whether the People are a real party in interest. Similarly, here, the County and the Municipalities' non-representative claims are not particularly relevant to the Court's real-party-in-interest inquiry.

Even if this Court affords some weight to the County and Municipalities' non-representative claims, they would only further underscore that the State is a real party in interest. That is because each non-representative claim advances the State's interest in remedying the widespread PCB pollution problem. First, the County and the Municipalities bring a non-representative public nuisance claim. FAC ¶¶ 124–40. This claim—just like the People's representative public nuisance claim—concerns the public nuisance created by "PCB

1    contamination of the County, the Municipalities, and the Bay," *id.* ¶ 134, and advances the State's

2    traditional prerogative and obligation to abate tortious interferences with community interests, *see*

3    *Acuna*, 14 Cal. 4th at 1103–06. Second, the County and Municipalities bring a private nuisance

4    claim. FAC ¶¶ 141–54. This private nuisance claim addresses PCB contamination of public

5    property controlled by the local governments including submerged lands (which the local

6    governments hold in trust for the People's benefit[10]), tidally affected parcels, buildings, roadways,

7    infrastructure including stormwater systems, inland waters, and land. *Id.* ¶ 142. PCB

8    contamination of such property is harmful because it contributes to PCB discharges into the Bay.

9    *Id.* ¶ 143. So, the private nuisance is best understood as a *subset* of the public nuisance at the heart

10   of this suit. *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009) (noting "a

11   legion of other authorities recogniz[ing]" that a public nuisance can also be a private nuisance).

12   Third, the County and the Municipalities bring a trespass claim that is similar to their private

13   nuisance claim. FAC ¶¶ 155–64. Like the private nuisance, the trespass is a subset of the public

14   nuisance. *Id.* Thus, the County and the Municipalities' non-representative claims focus on and

15   dovetail with the State's interests.

16          Defendants, moreover, are wrong that simply because the local governments may recover

17   compensatory damages,[11] the People have ceased to be a real party in interest to this action. NOR

18   ¶¶ 15–16. The widespread PCB contamination at hand can give rise to multiple real parties in

19   interest, each with different or overlapping rights of action. So, it is unremarkable that the County

20   and the Municipalities can seek remedies that the People cannot. Moreover, the County and

21   Municipalities' damages would have a distinctly public character. As Defendants recognize, the

---

[10] In other words, the state of California has granted certain submerged lands to the County and some of the Municipalities. FAC ¶¶ 135(h), 142(a). California law requires these grantees to hold these lands in trust for the benefit of the People. *Zack's, Inc. v. City of Sausalito*, 165 Cal. App. 4th 1163, 1175–86 (2008); *City of Coronado v. San Diego Unif. Port Dist.*, 227 Cal. App. 2d 455, 473 (1964) (citing *Mallon v. Long Beach*, 44 Cal. 2d 199, 205–06 (1955)); *see Granted Public Trust Lands: Program Background*, Cal. State Lands Comm'n (2022) ("All sovereign lands are held in trust for the benefit of the people of California."), https://perma.cc/URQ7-WET5.

[11] The People cannot recover damages through a representative public nuisance claim, but the County and the Municipalities may recover damages through a non-representative public nuisance claim. *See Cnty. of San Luis Obispo*, 178 Cal. App. 3d at 860.

County and the Municipalities seek damages "to recover their own past . . . costs to respond to the alleged PCB contamination" and thereby protect the State's interests in the environment, public trust resources, public health, and submerged lands. NOR ¶ 15; *see* FAC ¶¶ 108–10 (explaining the costs the County and the Municipalities have incurred). And it is of course the case that the State has a strong interest in having tortfeasors, not taxpayers, bear the cost of abating public nuisances.[12] Such damages would also serve state interests by deterring potential wrongdoers from interfering with community interests and by funding the County and Municipalities' activities, which often serve state functions. *See In re Facebook*, 354 F. Supp. 3d at 1134 (explaining that the State's political subdivisions "serve state functions").

"[E]xamin[ing] the essential nature and effect of th[is] proceeding as it appears from the entire record," *Nevada*, 672 F.3d at 670 (quotations omitted)— the People are a real party in interest. This action should be remanded for lack of complete diversity.

### 2.    Analogous case law confirms this view.

The Ninth Circuit's decisions in *Nevada* and *Lucent*, as well as analogous decisions by district courts, overwhelmingly confirm this conclusion.

### i.    This case is akin to *Nevada*, not *Lucent*.

In *Los Angeles*, the court found it helpful to compare the People's and city's PCB-related public nuisance claims to *Nevada* and *Lucent*. 2022 WL 2355195, at *3–5. The same comparison is instructive here. In *Lucent*, a California state agency brought a disability discrimination action "on behalf of a single . . . employee." *Nevada*, 672 F.3d at 670 (citing *Lucent*, 642 F.3d at 735).

---

[12] *See People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 136 (2017) (noting the "Legislature's public policy against public nuisances," and desire to "protect[] the public from the hazards caused by public nuisances"); *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal. App. 3d 1601, 1616 (1990) ("[n]o public interest would be served" "if a governmental property owner cannot pursue [a] tortfeasor for damage" caused by their "maint[enance] [of] a public nuisance"); *see also Vons Cos. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 473 (1996) (in the personal jurisdiction context, noting that "[a] State generally has a manifest interest in providing its citizens with a convenient forum for redressing injuries caused by out-of-state actors" (cleaned up)); *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 502 (2019) (noting "California's interest" in requiring manufacturers to bear the burdens of product-related injuries in order to protect Californians).

The employee later intervened in the litigation, though the district court sharply circumscribed his ability to independently prosecute his claims (because they would have been duplicative of those brought by the state agency). *Lucent*, 642 F.3d at 736, 740–42. Under these unusual facts, the Ninth Circuit "consider[ed] what interest California has in this litigation pursuant to its laws." *Id.* at 738. Although the agency argued that its suit furthered its "general governmental interest[]" in anti-discrimination, *id.*, the Ninth Circuit found that the State was not a real party in interest, *id.* at 740. The court pointed out that the agency had sued under a law that expressly provided that "the person claiming to be aggrieved shall be the real party in interest." *Id.* at 739 (quoting Cal. Gov't Code § 12965(c)(2)). Also, even though the agency sought equitable remedies that would provide benefits going beyond the single employee by requiring the employer to take certain actions to prevent future discrimination, those remedies were "tangential to the alleged relief sought for [the single employee]." *Id.*

By contrast, in *Nevada*, the state attorney general filed a *parens patriae*[13] suit against banking entities that had deceived consumers about mortgages and foreclosures, violating state consumer protection laws. *Nevada*, 672 F.3d at 664. The Ninth Circuit found Nevada was a real party in interest. *Id.* at 670. The court emphasized that the suit advanced the state's "specific, concrete" interest in preventing deceptive trade practices, protected "hundreds of thousands of homeowners" and others injured by such practices, and responded to an ongoing foreclosure crisis in Nevada. *Id.* at 670–71. The court rejected the defendants' argument that because Nevada sought restitution on behalf of injured mortgagors, the state ceased to be the real party in interest. *Id.* at 671. "That individual consumers may also benefit from this lawsuit [did] not negate Nevada's substantial interest in this case." *Id.* at 671 (cleaned up).

As the court concluded in *Los Angeles*, this Court should find that this suit akin to *Nevada*, not *Lucent*. *See Los Angeles*, 2022 WL 2355195, at *3 ("[T]he Court finds the present case more analogous to *Nevada* than *Lucent*."). This action seeks benefits not for a single aggrieved person,

---

[13] A state may invoke *parens patriae* authority to remedy injuries to "quasi sovereign" interests of the state, which harm a "substantial segment" of its population. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 599–600 (1982).

1   but for all Californians who share in the Bay's resources. It is well-established that California has

2   concrete interests in "clean[ing] its waters of PCBs, keep[ing] its fish and wildlife healthy, . . . and

3   prevent[ing] deadly diseases that arise from the ingestion of PCBs." *Id.* at *3. Unlike the statute at

4   issue in *Lucent*, which expressly barred representative claims, Cal. Civ. Proc. Code § 731 expressly

5   provides for representative claims in which the People are the real party in interest. *Lucent* and

6   *Nevada* therefore compel the conclusion that the People are a real party in interest here.

7              ii.   **Numerous decisions by district courts show that the People are a real party in interest.**

8

9              Many Ninth Circuit district courts have found the People to be a real party in interest in

10  actions involving representative public nuisance claims. Consider *Purdue Pharma, L.P.*, 2014 WL

11  6065907, at *1, 4 (C.D. Cal.), where the court found that the People—represented by two county

12  counsel—were a real party in interest to a suit to abate the opioids epidemic in California. The

13  court found the suit akin to *Nevada*, not *Lucent*. *Id.* at *2–3. The court found significant that under

14  Cal. Civ. Proc. Code § 731, representative nuisance claims are brought on the People's behalf. *Id.*

15  at *3. And the court easily found that the State had a strong interest in the outcome of a case

16  seeking abatement of a widespread opioid pandemic. *Id.* Significantly, the court reasoned that even

17  if nuisance abatement were ultimately limited to the geographic boundaries of the two counties,

18  that would not diminish the State's interest in the suit. *Id.* at *4.

19             In *County of Santa Clara v. Wang*, 2020 WL 8614186, at *1 (N.D. Cal.), the court found

20  the People to be a real party in interest to a suit involving a much smaller and more local nuisance:

21  the misuse of five agricultural parcels as junkyards, trucking facilities, and RV parks. The court

22  found dispositive that Cal. Civ. Proc. Code § 731 expressly delegates state authority to county

23  counsel. *Id.* at *2.

24             Similarly, district courts have remanded cases that address environmental problems but do

25  not involve a representative public nuisance claim. For example, in *California v. Exide*

26  *Technologies, Inc.*, No. 2:14-cv-01169-ABC-MANx, 2014 WL 12607708, at *1 (C.D. Cal. Apr.

27  9, 2014), the court considered a representative claim by a regional air quality management district

28

against a single polluting facility that had violated the district's rules. The court found important that the substantive statute at hand, like Cal. Civ. Proc. Code § 731, expressly authorized representative claims; that the district sought civil penalties that would benefit the State; and that the State had a strong interest in "protect[ing] its citizens' ambient air quality from emissions that know no borders." *Id.* at *2. The court found the People were a real party in interest, and did not find problematic that the suit involved only a single polluting facility. *See id.*

*Purdue Pharma*, *Wang*, and *Exide Technologies* underscore why the People's claims in this litigation should be remanded. Here, the People sue under a law that expressly authorizes county counsel and city attorneys to sue on the State's behalf. The People seek relief arising out of widespread contamination of the County, the Municipalities, and the Bay; this relief implicates the State's interest in preventing public nuisances and protecting the environment, public trust resources, and public health.[14]

## C.      Defendants' other arguments are unavailing.

Defendants' known and anticipated counterarguments are unavailing. Defendants are wrong to portray the abatement relief Plaintiffs seek as narrow or local. Defendants conjure a requirement that for the People to be a real party in interest, the relief requested must enure to the State alone.

---

[14] While less relevant, Ninth Circuit district courts also have routinely remanded actions where local government officials have represented the People under state consumer protection laws. These decisions—which involve everything from large-scale wrongdoing in major industries to small-scale misconduct relating to minor consumer products—demonstrate that courts have found the People to be a real party in interest even where the State's interests were much more attenuated than they are here. *See In re Facebook, Inc.*, 354 F. Supp. 3d at 1123–25, 1130–36 (N.D. Cal.) (remanding a suit involving representative claims brought by an Illinois county attorney under a state consumer law, relating to Facebook's data-sharing practices); *Cnty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, 2012 WL 4189126, at *2–4 (N.D. Cal.) (remanding representative FAL claims by a county counsel involving deceptive marketing of a single pharmaceutical drug); *People v. Universal Syndications, Inc.*, No. C 09-1186-JF(PVT), 2009 WL 1689651, at *5 (N.D. Cal. June 16, 2009) (remanding representative FAL and UCL claims relating to advertising of collectible coins and coin-holders); *People v. Time Warner, Inc.*, No. 2:08-cv-04446-SVW-RZx, 2008 WL 4291435, at *1–3 (C.D. Cal. Sept. 17, 2008) (remanding representative FAL and UCL claims relating to "cable television and internet services in the City of Los Angeles"); *People v. Check 'N Go of Cal., Inc.*, No. C 07-02789 JSW, 2007 WL 2406888, at *4–7 (N.D. Cal. Aug. 20, 2007) (remanding representative UCL claims against payday lenders that had tried to circumvent California laws); *People v. Steelcase Inc.*, 792 F. Supp. 84, 85– 86 (C.D. Cal. 1992) (remanding representative UCL and state antitrust claims relating to furniture manufacturing and sales).

A near-consensus of decisions confirms there is no such requirement. Finally, Defendants will likely rely on three district court decisions—*Avandia*, *M & P Investments*, and *Northern Trust*—to argue that the People are not a real party in interest. *In re: Avandia Mktg., Sales Practices & Prod. Liab. Litig. v. GSK*, 238 F. Supp. 3d 723 (E.D. Pa. 2017); *People v. M & P Invs.*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002); *People v. N. Tr. Corp.*, No. 2:12-cv-01813-DMG-FMOx, 2012 WL 12888851 (C.D. Cal. Dec. 19, 2012). These cases are distinguishable.

### 1.     Defendants distort the abatement relief Plaintiffs seek.

Defendants' Notice of Removal advances a distorted view of the abatement Plaintiffs seek. To begin, Defendants conflate with damages. For example, Defendants argue that "[w]ith respect to their representative public nuisance claim," the People cannot seek "statewide damages under Section 731." NOR ¶ 16. This is a *non sequitur* because damages are unavailable for a representative public nuisance claim; abatement is the only remedy. *Cnty. of San Luis Obispo*, 178 Cal. App. 3d at 860. Abatement is distinct from damages: abatement's "sole purpose is to eliminate the hazard," not to compensate for damages already incurred because of it. *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 132 (2017).

Citing the prayer for relief in the complaint, Defendants then argue that Plaintiffs' public nuisance claims seek *only* the County and the Municipalities' future costs to control discharges of PCBs through their stormwater systems. NOR ¶¶ 4, 15–16. Defendants are wrong for two reasons. First, while the prayer for relief requests "an abatement fund to cover all future costs" needed by the County and the Municipalities to curb PCB discharges, it also seeks "[a]ny other and further relief that the Court deems just, proper, and appropriate." FAC at 34–35. This open-ended prayer for relief reflects that courts have "broad discretion . . . to fashion[] appropriate remedies to abate public nuisances," *People ex rel. Sorenson v. Randolph*, 99 Cal. App. 3d 183, 190 (1979), that are "proper and suitable to the facts of [the] case," *ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th at 132. So, the prayer for relief seeks more than just an abatement fund to cover the County and Municipalities' future costs of controlling PCB pollution.

Second, even accepting Defendants' misreading of the prayer for relief as seeking only an abatement fund, Defendants are wrong that a prayer for relief can limit a court's power to enter equitable relief. *See* NOR ¶¶ 15–16. Under state law, when an action is contested, "the prayer does not limit the relief which may be granted provided such relief is 'consistent with the case made by the complaint and embraced within the issue.'" *Babbitt v. Babbitt*, 44 Cal. 2d 289, 293 (1955); *Am. Motorists Ins. Co. v. Cowan*, 127 Cal. App. 3d 875, 883 (1982) ("[I]t is fundamental that after trial on the merits, the court may afford any form of relief supported by the evidence . . . whether requested in the pleadings or not."). So, too, under federal law. *See* Fed. R. Civ. P. 54(c) (judgments other than default judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

Even accepting Defendants' flawed argument that the relief in this action will necessarily be limited to an abatement fund that covers the County and Municipalities' future costs of controlling PCB pollution, such a fund would principally enure to the State's benefit. "An equitable remedy" like abatement "provides no compensation to a plaintiff for private harm." *ConAgra Grocery Prods. Co.,* 17 Cal. App. 5th at 132. An abatement fund therefore would not remedy the County and the Municipalities' individual injuries; rather, it would be used to mitigate PCB pollution of the Bay and thus advance state interests. Even if pollution control measures take place only within the County and the Municipalities, the entire Bay would benefit. In fact, local pollution control measures would benefit the State's environment as a whole. The PCB pollution in the Bay principally affects birds, fish, and people who eat PCB-contaminated fish. *See* FAC ¶¶ 37–43, 45, 100–04. These birds and fish can migrate outside the Bay, and Californians from outside the Bay Area use the Bay's waters for fishing and recreation. So, any abatement relief that protects the Bay from PCBs would provide a statewide benefit.[15]

### 2.   There is no requirement for relief to enure to the State alone.

Defendants contend that for the People to be a real party in interest, "the relief sought" in

---

[15] Also, as the court found in *Purdue Pharma*, 2014 WL 6065907, at *4, the State can have a strong interest even in abatement relief that benefits *only* a narrow geographic area.

1  this action must "[e]nure[] to [them] alone." NOR ¶ 14. But, as many courts have explained, "that

2  is not the test in the Ninth Circuit." *In re Facebook, Inc.*, 354 F. Supp. 3d at 1135.[16]

3  Defendants draw the purported "enure alone" standard from dicta in *Lucent*, which in turn

4  misquoted dicta in *Missouri Railway*. In *Missouri Railway*, a state railroad commission sued an

5  out-of-state railway company in state court. 183 U.S. at 57. The company attempted to remove the

6  action, but the state court refused. *Id.*; *see In re Facebook*, 354 F. Supp. 3d at 1126 n.2 ("At the

7  time, a defendant needed permission [from the state court] to remove a case . . . ."). The state

8  supreme court ruled on the merits against the company. *Mo. Ry.*, 183 U.S. at 57. The U.S. Supreme

9  Court vacated that ruling because the company should have been allowed to remove the action on

10 diversity grounds. *Id.* at 61. The Court reasoned that Missouri was not a real party in interest to

11 the railroad commission's suit because "[i]ts results will not enure to the benefit of the State in any

12 degree." *Id.* at 59.

13 The Court also observed, "[I]t may fairly be held that the State is such real party when the

14 relief sought is that which *enures to it alone*, and in its favor the judgment or decree, if for the

15 plaintiff, will effectively operate." *Id.* at 59 (emphasis added).[17] As Judge Chhabria explained in

16 *In re Facebook*, this observation was dicta because the Court determined that the requested relief

17 would not benefit the state *at all*. 354 F. Supp. 3d at 1126 ("This statement was unnecessary, since

18 the Court found that the Railroad Commission's lawsuit would not benefit the State 'in any

19 degree.'"). Moreover, this observation "cannot be understood to mean that this is the *only*

20 circumstance in which a state can be deemed the real party in interest . . . . Rather, it must be

21 understood as referencing an example of a circumstance in which the state is the real party in

22 interest." *Id.* at 1128.

---

[16] *Accord Purdue Pharma L.P.*, 2014 WL 6065907, at *4; *Montelongo v. Radioshack*, No. 2:09-cv-01235-MMM-AJWx, 2010 WL 11507995, at *11 (C.D. Cal. Mar. 31, 2010); *Dep't of Fair Emp't & Hous. v. Corr. Corp. of Am.*, No. 1:09-cv-01388-LJO-DLBx, 2009 WL 3806258, at *4 (E.D. Cal. Nov. 12, 2009); *Universal Syndications, Inc.*, 2009 WL 1689651, at *3–6 & n.2; *Time Warner, Inc.*, 2008 WL 4291435, at *2.

[17] The *Supreme Court Reporter* uses the formulation, "inures to it alone." 22 S. Ct. at 21. The *United States Reports* use the formulation, "enures to it alone." 183 U.S. at 59.

Later, in *Lucent*, the Ninth Circuit misquoted *Missouri Railway* as having held that "a State's presence in a lawsuit will defeat [diversity jurisdiction] *only if* 'the relief sought is that which inures to it alone.'" 642 F.3d at 737. But this misquotation was itself dicta, because—instead of relying on this misquotation—the *Lucent* court proceeded to weigh the relief enuring to the state against the relief enuring to the aggrieved individual employee. *Id.* at 739 & n.8 (finding the state's interests in relief "tangential to the alleged relief sought for [the aggrieved individual]").

The next year, in *Nevada*, the Ninth Circuit found the state of Nevada to be a real party in interest even though the state "sought restitution for the victims of the fraud in addition to a statewide injunction and civil penalties." *In re Facebook*, 354 F. Supp. 3d at 1127 (citing *Nevada*, 672 F.3d at 670–72). Because the relief in *Nevada* did not enure to the state alone, it "significantly undermines [Defendants'] reliance on the 'enures to the state alone' phrase from *Missouri Rail[way]*." *Id.*; *accord Purdue Pharma L.P.*, 2014 WL 6065907, at *4 ("Indeed, literal application of this language would raise serious questions about the Ninth Circuit's decision in *Nevada*, where restitution was also sought on behalf of individual consumers.").

After closely examining *Missouri Railway*, *Lucent*, and *Nevada*, Ninth Circuit district courts have overwhelmingly "rejected" the "application of *Missouri Railway*" Defendants urge. *Universal Syndications*, 2009 WL 1689651, at *4; *see In re Facebook*, 354 F. Supp. 3d at 1135; *supra* n.16 (collecting decisions). There is no requirement that for the People to be a real party in interest, the relief sought in this action must enure to them alone.

### 3.    Defendants' case law citations will not help them.

Based on their Notice of Removal and their opposition to remand in *Los Angeles*, Plaintiffs expect Defendants to draw on three distinguishable or unpersuasive district court decisions: *Northern Trust*, *Avandia*, and *M & P Investments*. *See* NOR ¶¶ 11, 13, 16 (relying on *Avandia* and *M & P Investments*). If anything, these decisions only underscore that the People are a real party in interest to this suit.

In *People v. Northern Trust Corp.*, 2012 WL 12888851, at *1 (C.D. Cal.), the court concluded that the People were not a real party in interest to a suit involving representative UCL

1  and California False Claims Act ("CFCA") claims by the Los Angeles City Attorney. The claims

2  arose from the defendants' alleged misconduct in managing the Los Angeles City Employees'

3  Retirement System ("LACERS"). *Id.* The court found it significant, but not dispositive, to the real-

4  party-in-interest inquiry that the UCL expressly authorized representative claims. *Id.* at *3

5  ("statutory language granting authority to sue 'is helpful . . . but not binding on courts'" (quoting

6  *Lucent*, 642 F.3d at 739 n.7)). Ultimately, the court concluded that the State's interests were too

7  attenuated because "the complaint was filed on behalf of a single entity—LACERS," *id.* at *3, and

8  the alleged harm "stem[med] from the contractual relationship between LACERS and

9  Defendants," instead of "unfair business practices affecting the public more broadly." *Id.* at *3–4.

10  And the remedies sought were primarily private: "recovery of $95 million in losses that LACERS

11  suffered as a result of Defendants' alleged malfeasance." *Id.* at *4.

12       *Northern Trust* is distinguishable on numerous grounds. <u>First</u>, and most importantly, the

13  claims in *Northern Trust* arose from wrongful conduct injuring only LACERS, a single, "highly

14  specialized" victim—not wrongful "conduct in the wider marketplace." *Id.* at *3–4. By contrast,

15  all the claims here arise from large-scale wrongful conduct harming the entire Bay Area. <u>Second</u>,

16  the tort claims here do not arise from a contractual relationship. <u>Third</u>, *Northern Trust* did not

17  involve a representative public nuisance claim, which has a distinctly public character. <u>Fourth</u>, as

18  explained, the remedies sought here would enure to the State's benefit, not to a single entity like

19  LACERS. Plaintiffs' suit is nothing like *Northern Trust*.

20       *Avandia* and *M & P Investments* are even further afield. In *Avandia*, a Pennsylvania district

21  court overseeing a multidistrict litigation found that California was not a real party in interest to

22  an action brought by a California county counsel under the FAL. 238 F. Supp. 3d at 725. So,

23  *Avandia* did not apply the presumption against removal jurisdiction. Even more, *Avandia*

24  presented "an unusual situation": the plaintiff moved to dismiss their own complaint five years

25  after filing suit. *Id.* at 724. And the relief at hand was localized because the California Attorney

26  General had already entered a settlement with the defendant, releasing it from all FAL claims

27  except those brought by the county for local FAL violations. *Id.* at 726. Further, *Avandia*—as

28

Judge Chhabria observed in *In re Facebook*—was littered with "analytical errors." *In re Facebook*, 354 F. Supp. 3d at 1135. Among other things, *Avandia* incorrectly attempted to apply Ninth Circuit law instead of Third Circuit law, *id.* at 1135 & n.11, misapplied Ninth Circuit law by imposing an "enure alone" requirement, *id.* at 1135, and did not consider the substantive state law including "the purpose of California's consumer protection laws and how they operate," *id.*

 *M & P Investments* is similar to *Avandia* in that it is distinguishable and unpersuasive. That case also did not involve the presumption against removal jurisdiction. *See generally M & P Invs.*, 213 F. Supp. 2d at 1208. "Rather, the question before the court was whether it could grant an injunction for the plaintiff that would require state agencies to enforce it." *Los Angeles*, 2022 WL 2355195, at *4. "[T]he State and the Attorney General expressly objected to the suit being brought on behalf of the People, and the city attorney conceded that he was acting on behalf of the locality rather than the state." *Universal Syndications, Inc.*, 2009 WL 1689651, at *6 (citing *M & P Invs.*, 213 F. Supp. 2d at 1213–14); *see Time Warner, Inc.*, 2008 WL 4291435, at *2 n.1 (similar). The Attorney General's objection (and the city attorney's concession) carried exceptional force because earlier, "the city attorney and a state agency . . . had misrepresented that the State [Attorney General] was involved in and had approved of the city attorney's litigation efforts." *Check 'N Go of Cal., Inc.*, 2007 WL 2406888, at *7. That's not all. *M & P Investments* is distinguishable also because:

- The court's decision exhibited basic defects in legal reasoning, *see Check 'N Go of Cal., Inc.*, 2007 WL 2406888, at *6 ("[T]he court in *M & P Investments* conflated . . . whether a city attorney has authority under the statute to sue on behalf of the State and if so, what is the scope of such authority."); and

- "[T]he court in *M & P Investments* clearly was moved by the particular facts before it," including the city attorney's misrepresentation and that the city was "accused . . . of being responsible for the contamination over which it was suing the defendants," *id.* at *7.

1      In sum, *Northern Investments*, *Avandia*, and *M & P Investments* are very different cases

2  that lack persuasive value. Defendants' unsuccessful reliance on them to oppose remand in *Los*

3  *Angeles* only underscores that Defendants have no choice but to rely on marginally relevant case

4  law. *See* NOR ¶¶ 11, 13, 16 (citing *Avandia* and *M & P Investments*).

**IV.    CONCLUSION**

6      The People are a real party in interest to this suit. The People seek abatement of a public

7  nuisance—a tortious interference with widely shared community interests. Indeed, the California

8  Legislature has found the State's interest in abating public nuisances to be so strong that it has

9  enlisted county counsel and city attorneys to represent the People. The requested abatement relief

10  would help clean up the Bay, where state regulators have found it necessary to adopt strict pollution

11  controls to protect state interests. Such relief would benefit countless Californians by advancing

12  time-honored state interests in the environment, public trust resources, public health, and

13  submerged bottomlands. While the County and Municipalities' non-representative claims are

14  minimally relevant to the real-party-in-interest analysis, they also support the conclusion that this

15  suit serves State interests and that the People are a real party in interest. This Court should reject

16  Defendants' attempts to distort the abatement relief Plaintiffs seek, conjure a requirement that

17  relief enure to the State alone, and rely on inapposite case law. If this Court harbors any doubts,

18  the strong presumption against removal jurisdiction requires resolving them in Plaintiffs' favor.

19  This state-law action should be returned to state court.

Respectfully submitted,

**SHER EDLING LLP**

Dated: August 11, 2022      By:   */s/ Matthew K. Edling*
                            Matthew K. Edling (SBN 250940)
                            matt@sheredling.com
                            Victor M. Sher (SBN 96197)
                            vic@sheredling.com
                            Timothy R. Sloane (SBN 292864)
                            tim@sheredling.com
                            SHER EDLING LLP
                            100 Montgomery Street, Ste. 1410

San Francisco, CA 94104
Telephone: (628) 231-2500
Fax: (628) 231-2929

*Attorneys for all Plaintiffs, individually and on behalf of the People of the State of California*

John D. Nibbelin (SBN 184603)
County Attorney
David A. Silberman (SBN 211708)
Chief Deputy County Attorney
dsilberman@smcgov.org
COUNTY OF SAN MATEO
400 County Center
Redwood City, CA 94063
Telephone: (650) 363-4250
Fax: (650) 363-4034

*Attorney for Plaintiff County of San Mateo, individually and on behalf of the People of the State of California*

Mona G. Ebrahimi (SBN 236550)
Town Attorney
mebrahimi@kmtg.com
Kevin A. Flautt (SBN 257892)
kflautt@kmtg.com
KRONICK   MOSKOVITZ   TIEDEMANN   &
GIRARD
1331 Garden Hwy, 2nd floor
Sacramento, CA 95833
Telephone: (916) 321-4500
Fax: (916) 321-4555

*Attorneys for Plaintiff Town of Atherton, individually and on behalf of the People of the State of California*

1
2
3
4
5

Thomas R. McMorrow (SBN 143328)
City Attorney
TMcMorrow@manatt.com
MANATT, PHELPS & PHILIPS, LLP
1215 K Street, Suite 1900
Sacramento, CA 95814
Telephone: (916) 552-2300
Fax: (415) 291-7646

6
7

*Attorney for City of Brisbane, individually and on behalf of the People of the State of California*

8
9
10
11
12

Christopher J. Diaz (SBN 235249)
City Attorney
christopher.diaz@bbklaw.com
BEST BEST & KRIEGER LLP
2001 North Main St., Suite 390
Walnut Creek, CA  94596
Telephone: (925) 977-3309
Fax: (925) 977-1870

13
14
15

*Attorney for Town of Colma and Town of Hillsborough, individually and on behalf of the People of the State of California*

16
17
18
19
20

Valerie J. Armento (SBN 78717)
Interim City Attorney
varmento@cityofepa.org
CITY OF EAST PALO ALTO
2415 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 853-5901
Fax: (650) 853-5923

21
22

*Attorney for City of East Palo Alto, individually and on behalf of the People of the State of California*

23
24
25
26
27
28

1
2
3
4
5
6
7

Benjamin L. Stock (SBN 208774)
City Attorney
bstock@bwslaw.com
Denise S. Bazzano (SBN 220148)
City Attorney
dbazzano@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA  94612
Telephone: (510) 273-8780
Fax: (510) 839-9104

8
9

*Attorneys for City of Foster City, individually and
on behalf of the People of the State of California*

10
11
12
13
14

Nira F. Doherty (SBN 254523)
City Attorney
ndoherty@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
181 Third Street, Suite 200
San Rafael, CA  94901-6587
Telephone: (415) 755-2600
Fax: (415) 482-3582

15
16

*Attorney for City of Menlo Park, individually and on
behalf of the People of the State of California*

17
18
19
20
21
22

Michelle M. Kenyon (SBN 127969)
City Attorney
mkenyon@bwslaw.com
Denise S. Bazzano (SBN 220148)
dbazzano@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA  94612-3501
Telephone: (510) 903-8815
Fax: (510) 839-9104

23
24

*Attorney for City of Pacifica, individually and on
behalf of the People of the State of California*

25
26
27
28

Cara E. Silver (SBN 136992)
Town Attorney
ces@jsmf.com
JORGENSON, SIEGEL, McCLURE & FLEGEL, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Telephone: (650) 324-9300
Fax: (650) 324-0227

*Attorney for Town of Portola Valley, individually and on behalf of the People of the State of California*

Veronica Ramirez (SBN 234300)
City Attorney
vramirez@redwoodcity.org
M. Eleonor Ignacio (SBN 254117)
Senior Assistant City Attorney
eignacio@redwoodcity.org
THE CITY OF REDWOOD CITY
1017 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 780-7200
Fax: (650) 780-5963

*Attorneys for City of Redwood City, individually and on behalf of the People of the State of California*

Trisha Ortiz (SBN 227166)
Interim City Attorney
tortiz@rwglaw.com
THE CITY OF SAN BRUNO
567 El Camino Real
San Bruno, CA 94066-4247
Telephone: (650) 616-7057
Fax: (650) 742-6515

*Attorneys for City of San Bruno, individually and on behalf of the People of the State of California*

Gregory J. Rubens (SBN 129737)
City Attorney
grubens@cityofsancarlos.org
THE CITY OF SAN CARLOS
600 Elm Street
San Carlos, CA 94070
Telephone: (408) 606-6300
Fax: (408) 606-6333

*Attorney for City of San Carlos, individually and on behalf of the People of the State of California*

Prasanna W. Rasiah (SBN 206842)
City Attorney
prasiah@cityofsanmateo.org
THE CITY OF SAN MATEO
330 W. 20th Ave.
San Mateo, CA 94403
Telephone: (650) 522-7020
Fax: (650) 522-7021

*Attorney for City of San Mateo, individually and on behalf of the People of the State of California*

Jean B. Savaree (SBN 100185)
Town Attorney
jbs@adcl.com
Kai B. Ruess (SBN 278093)
kruess@adcl.com
Senior Deputy Town Attorney
AARONSON DICKERSON COHN & LANZONE
1001 Laurel St, Suite A
San Carlos, CA 94070
Telephone: (650) 593-3117
Fax: (650) 453-3911

*Attorneys for Town of Woodside, individually and on behalf of the People of the State of California*